HUBBARD (ATKINSON v.). See Case No. 612.

## Case No. 6,815.

HUBBARD v. BANK OF UNITED STATES et al.

[5 Hunt, Mer. Mag. 75.]

Circuit Court, S. D. New York. June, 1840.

CORPORATIONS—STOCK—TRANSFER—PURCHASER AS LEGAL OWNER BEFORE TRANSFER—ATTACHMENT.

[1. The court will compel a bank to permit a transfer of shares of its stock to be made upon the proper books to the rightful owner, regardless of the by-laws on that subject.]

[2. A purchaser of bank stock becomes its legal owner on its full sale to him, without waiting the formal transfer on the books of the bank.]

[3. Trustees in an attachment suit, who unsuccessfully contest a transfer of bank stock on the books of the bank on the ground that the sale by the debtor was fraudulent as to the attachment creditor, are liable for costs.]

[This was a bill in equity by Amos H. Hubbard against the Bank of the United States and others, to compel a transfer of bank stocks on the bank's books.] The points presented by the pleadings and proofs are, in substance, that James Lanman, of Norwich, Connecticut, had invested funds belonging to the separate estate of his wife in the stock of the Bank of the United States, intended to be reserved for her separate use, but, for convenience of transfer and drawing dividends, the shares and scrip were taken in the name of James Lanman and his wife jointly. That on the 1st of September, 1834, the complainant purchased of Lanman and wife one hundred and fifty shares of said stock, at Norwich, paying $119 per share therefor, and received the necessary power of attorney and authority for having a transfer made to him on the books of the bank. Application was made the next day at the agency of the bank in New York, to have the transfer perfected; but some slight informality in the papers required their being sent back to Norwich and rectified, before the bank would act upon them, and they were not presented in due form until the 6th of September, on which day 125 shares were transferred to the complainant; but the scrip for the remaining 25 shares not being found in the agency where it was supposed by the complainant to have been deposited with the 125 shares, the bank deferred the transfer of those shares until the scrip should be produced. It was subsequently found, on search, in possession of Lanman, at Norwich, and was immediately transmitted to New York, with intent to complete the transfer. On the 6th of September, 1836, an attachment was sued out conformably to the laws of the state,

against the property of James Lanman. as a non-resident debtor; and. at two o'clock in the afternoon of that day, notice thereof was served on the bank, and the said twenty-five shares of stock were claimed under the attachment. The trustees, when appointed, demanded the assignment of the stock to them; but the bank declined making it, because it was claimed by the complainant under his purchase; and on the presentation of the scrip, subsequent to the attachment, the bank declined making the transfer on the books to the complainant, because of the pendency of such attachment.

Goddard & Staples, for complainant, insisted that the sale of the stock was complete; and vested the property in the complainant before the attachment issued. That if the sale was insufficient to pass the property, without being accompanied by a transfer of the shares on the books of the bank, yet that it was not subject to attachment for the debts of Lanman, having been purchased with the separate funds of the wife, and held for her use under her marriage settlement.

Mr. Bonney, for trustees, contended that the stock was the property of James Lanman, and subject to the claims of his creditors prior to the first of September, and that the alleged sale to the complainant on that day did not pass the property so as to prevent the attachment arresting it for the benefit of all his creditors,—a transfer on the books of the bank being an indispensable requisite to the completion of a sale. That the sale was palpably a family arrangement (the complainant being Lanman's son-in-law), with a view to rescue this fund for the use of Lanman and wife, and was therefore fraudulent, as against his creditors.

Before THOMPSON, Circuit Justice. and BETTS, District Judge.

THE COURT remarked that there was no proof to support the allegation that the purchase by the complainant was collusive or fraudulent with respect to the creditors of Lanman. The controversy, then, was between a bona fide purchaser and the attachment creditors, and it turned exclusively upon questions of law. The rights and interests of proprietors or stockholders in banking companies pass by assignment, and no other formality is requisite to vest the full property therein, in a purchaser. 2 Cow. 770; 11 Wend. 627; 6 Pick. 324; 8 Pick. 90; 9 Pick. 202; 10 Pick. 422. The existence of by-laws of the bank prohibiting any transfer of stock, except upon the books of the bank, affects only the corporation or individual corporators, and cannot control the rights of third parties. An assignee becomes absolute owner of the stock without observing that method of transfer, and notwithstanding any prohibitory by-law. The by-law will be allowed to operate no further, as against third parties, than to protect liens of the corporation upon the stock existing previous to its sale or assignment. Although the purchaser acquires the full property of the stock by sale and assignment. yet, to give him every beneficial enjoyment of it (the right of a corporator, for instance), it may be necessary that it should be transferred to his name at the bank; and, if the bank refuses to give him that benefit of his purchase, a court of chancery will compel it to open its transfer books and register the assignment in his behalf. [Mechanics' Bank of Alexandria v. Seton] 1 Pet. [26 U. S.] 299; 16 Mass. 101. These two considerations determine the case in favor of the complainant, and entitle him to the decree he prays for. And the court observed it was not therefore called upon to decide whether the stock is protected from attachment as the sole property of Mrs. Lanman, but that it saw no reason to doubt, upon the proofs, that Mrs. Lanman had a right to hold this property exempt from the debts of her husband, or that a court of chancery might, in the form of proceeding, interpose its guardianship over her interests, and preserve them from the attachment of his creditors. 5 Johns. Ch. 464; 6 Johns. Ch. 25; Id. 178; Id. 222.

On the question of costs, the court observed that the defendants did not stand in the relation of naked trustees, seeking the direction of the court or submitting themselves to it, but were litigant parties contesting the complainant's right, and maintaining the permanent right of creditors. Whether they are personally interested in these debts would not vary the case. because they must be regarded as acting under a guaranty, or as assuming this adversary attitude at their own hazard; and it is no less meet in equity than at law that they should bear the expenses created by a resistance to the rights of the complainant. found on examination not to be well founded. Decreed accordingly that the Bank of the United States transfer to the complainant the twenty-five shares of stock mentioned in the pleadings, and that the trustees of the attaching creditors pay the complainant's costs.