JOSEPH M. THUMAN, Respondent, v. CLAWSON & WILSON COMPANY, Appellant.

Fourth Department, January 7, 1925.

**Contracts — construction — contract by plaintiff to manufacture and sell clothing and to maintain certain equipment — defendant agreed to order sufficient clothing to keep plaintiff busy — defendant agreed to purchase, at termination of contract, cloth, etc., purchased by plaintiff for manufacture of clothes ordered by defendant — provision, that stipulated prices would increase or decrease with fluctuations of market, does not make contract indefinite — defendant is estopped from taking advantage of failure of plaintiff to fully perform during first six months — plaintiff cannot recover loss of yardage through failure of defendant to order particular sizes.**

A provision in the contract between the parties to this action, under which the plaintiff was to keep sixty power sewing machines constantly operating for the purpose of manufacturing clothing for the defendant and the defendant was to keep the plaintiff employed, that in the event of the non-renewal of the agreement the defendant was to buy at cost from the plaintiff all trimmings, findings, etc., purchased expressly for the manufacture of garments ordered by the defendant, is construed to mean that the defendant agreed to purchase all trimmings, findings, etc., to a reasonable amount purchased expressly for the manufacture of garments subject to order from the defendant and in the possession of the plaintiff unfabricated at the termination of the contract, and will not be construed to mean that the defendant was required to buy from the plaintiff only merchandise purchased by him for the manufacture of garments specifically ordered by the defendant and not made up and delivered before the contract terminated.

The contract was not made so indefinite as to be unenforcible by a provision relating to prices to the effect that the quotations specified were estimated cost prices at the date of the contract and were subject to change and should increase or decrease in proportion to future fluctuations in the cost to the plaintiff of labor or findings and materials at the mill, for it appears that the parties on several occasions came to an understanding as to prices after considering the items mentioned, and that such an understanding was reached without any difficulty; the contract manifests a complete meeting of the minds and a claim that it is unenforcible must fail.

The defendant is estopped from now contending that the plaintiff did not keep up with the orders furnished by it during the first six months of the contract, since, notwithstanding the plaintiff's failure to perform as agreed, the defendant proceeded thereafter under the contract.

The plaintiff cannot recover damages based on the fact that the defendant ordered certain sizes of boys' garments which required more cloth to manufacture, since the defendant had that right under one of the provisions of the contract.

Appeal by the defendant, Clawson & Wilson Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 16th day of May, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of May, 1924, denying the defendant's motion for a new trial made upon the minutes.

*Thomas C. Burke,* for the appellant.

*Merritt N. Baker,* for the respondent.

Taylor, J.:

This defendant is a large dealer in boys' and men's garments, and had large quantities of them manufactured by outside parties. The plaintiff owned sixty power sewing machines and manufactured boys' garments. Plaintiff and defendant entered into a contract for such work, which was to take effect August 1, 1919, and run to December 31, 1920. The pertinent parts of that contract read as follows:

" *First.* Party of the first part [this defendant] agrees to order hereunder sufficient merchandise to keep sixty power sewing machines constantly operating during each month of the duration hereof.

" *Second.* Party of the second part [this plaintiff] agrees to keep available sixty power sewing machines for the manufacture of merchandise ordered by the party of the first part, subject, however, to strikes and any other labor troubles and mechanical conditions beyond their control.

" *Fourth.* The above quotations [of sizes, materials and approximate prices] are estimated cost prices to party of the first part of the manufactured goods as of this day and are subject to change and shall increase or decrease in proportion to future fluctuations in the cost to party of the second part of labor or findings and materials at the mills.

" *Sixth.* Owing to the limited capital of the party of the second part, the party of the first part agrees to purchase and have on hand sufficient materials to sell to the party of the second part so that they may constantly operate the said sixty machines. Failure to comply with this, the party of the first part agrees to compensate the party of the second part for any loss they may sustain thereby.

" *Seventh.* * * * In the event of non-renewal of this agreement, the party of the first part agrees to buy at cost from the

party of the second part all trimmings, findings, etc., purchased expressly for the manufacture of garments ordered by the party of the first part."

The contract was not renewed. Plaintiff, under article 7 in his first cause of action, claims that he should recover for the cost price of merchandise purchased by him for use in the manufacture of goods for defendant and left on hand at the expiration time of the contract; the defendant having refused to purchase such merchandise. From the testimony bearing on this cause of action, it is reasonable to conclude that the jury awarded plaintiff the sum of $2,789.10 therein. The second cause of action was for the recovery of damages for breach of the 4th and 1st articles of the contract above quoted. The award in the second cause of action was such that the total verdict was $8,789.10. Defendant pleaded a counterclaim, but abandoned it on the trial.

Whether or not plaintiff is entitled to recover anything on the first cause of action depends upon the correct interpretation of the above-quoted articles 7 and 2 of the contract. Under article 7 the defendant agreed that at the expiration time of the contract it would buy at cost from the plaintiff all trimmings, findings, etc., purchased expressly for the manufacture of garments *ordered* by the defendant. This is interpreted by the defendant to mean that it was required to buy from the plaintiff only merchandise purchased by plaintiff for the manufacture of garments specifically ordered by the defendant and not made up and delivered before the contract terminated. While plaintiff insists that the real intention of the parties in the use of this language was to cover left-over materials bought by plaintiff for use in manufacturing for defendant garments such as the contract comprehended. The testimony indicates that plaintiff was buying for use in making the garments for defendant materials specially adapted for defendant's purposes; also, that reasonable business economy warranted buying in considerable quantities in advance. With these circumstances in mind, the interpretation of the defendant seems too narrow. The meaning of the language must be held to be the same as if it read, " all trimmings, findings, etc., reasonable in amount, purchased expressly for the manufacture of garments subject to order by the party of the first part, and in possession of plaintiff unfabricated on January 1, 1921."

As to article 2 of the contract, the reason for plaintiff's failure to keep sixty machines in operation during the first six months and the effect thereof are not important. For defendant's counterclaim in that respect was abandoned, no attempt having been made by defendant to prove any damages thereunder.

The award evidently made in the first cause of action is sustained by the evidence, and, if standing alone should not be disturbed.

As to the second cause of action, defendant contends and clearly raises the question that the contract, in its executory aspect (article 4), is so indefinite and uncertain as to be unenforcible; citing *United Press Co.* v. *N. Y. Press Co.* (164 N. Y. 406). There is no question but that in a contract of this character, if any really essential element is open to future negotiation or agreement, the contract is unenforcible. (*Varney* v. *Ditmars,* 217 N. Y. 223.) With this in mind, the test applicable in the instant case is this: Is there such an absence of definite provision in the contract as to prices to be payable . in the future — such vagueness and uncertainty — that mere resort to readily ascertainable data will not suffice, but that future agreement must be resorted to?

It will be observed that the specified fluctuations in cost upon which future prices to defendant were to depend, were in cost of labor, findings and material; that as time went on the parties on several occasions came to an understanding as to prices after considering these items; and it does not appear that any particular difficulty was encountered in so doing. This would indicate that the data essential for arriving at such prices at any given time were readily ascertainable. The contract manifests a complete meeting of minds, and defendant's claim that it is unenforcible for uncertainty must fail. (*Phillips-Jones Co.* v. *Reiling & Schoen, Inc.,* 193 App. Div. 716; *Solter* v. *Leedom & Worrell Co.,* 252 Fed. 133.)

Defendant makes the point that plaintiff did not keep up with the orders furnished by defendant during the first six months of the contract. However, defendant did not terminate the contract for this reason;. and having proceeded under it, defendant is estopped from taking advantage of any such breach by plaintiff.

The principle is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, any defense based thereon is lost and the injured party is himself liable if he subsequently fails to perform. (*Schulder* v. *Ladew Co., Inc.,* 178 App. Div. 458; *Rosenthal Paper Co.* v. *Nat. F. B. & P. Co.,* 226 N. Y. 313; *Strasbourger* v. *Leerburger,* 233 id. 55; *Griggs* v. *Renault Selling Branch, Inc.,* 179 App. Div. 845; *Benjamin Harris Co., Inc.,* v. *Appelbaum,* 172 N. Y. Supp. 709; *Heller & Bro.* v. *Continental Mills,* 196 App. Div. 7; affd., 233 N. Y. 641.)

It should here be observed that assent to a continuation of performance of the contract by one party does not necessarily include an agreement to accept the deficient performance of the other party as a complete discharge of the obligation. (Williston

Sales [2d ed.], 360.) Nor is the liability to pay damages for insufficient performance extinguished. (Id. 1262.)

This plaintiff, in order to sustain his action, must show on his part ability and willingness to perform. Upon that question it does not appear that during the second period of the contract plaintiff had the same number of machines in operation that he had during the first period; and it appears that he did not produce in the second period all garments that were ordered by defendant. However, defendant requested him to curtail production and for plaintiff to have been required to supply more garments, under the circumstances, would not have been justifiable.

It should be stated that even if plaintiff was entitled to succeed in the second cause of action, the damages found were excessive; for under plaintiff's own testimony and the admissions of his counsel on the trial, plaintiff would have been saved whole had he been permitted to deliver 3,794 additional dozen garments in the last six months, at a profit of at most eighty-one and three-quarters cents per dozen. This would have entitled him to an award in this cause of action of not more than $3,101.59. It seems to stand conceded that the jury gave plaintiff his maximum claim, viz., $2,789.10, in the first cause of action. Whereby the total verdict should not have exceeded $5,890.69, instead of having been $8,897.42.

Plaintiff claims that if defendant had confined itself to ordering certain particular sizes of garments specified in the contract, plaintiff could have saved some two yards of cloth out of each twenty yards required to make a dozen garments; and plaintiff seeks to include as an item of damage inability to make such saving because defendant ordered other sizes. This claim is disposed of by reference to article 3 of the contract, which gave defendant the right to order at will any sizes mentioned in the contract.

The contract must be held to be a valid and subsisting agreement, and the plaintiff is entitled to recover such damages as he suffered through defendant's breach of the contract; subject to the defendant's right to offset or counterclaim its damages growing out of the plaintiff's breach during the first period. (*Rosenthal Paper Co. v. Nat. F. B. & P. Co., supra.*)

The fact that plaintiff pleaded full performance on his part and proved only partial performance, seems to have been disregarded.

For the guidance of the trial court hereafter, it should be stated that we find: (a) That the contract is enforcible and that plaintiff can recover for its breach, subject to any lawful offset or counterclaim of defendant; (b) that plaintiff can recover the cost of all materials remaining on hand, as specified in article 7 of the contract,

which are found to have been purchased expressly for the manufacture of garments subject to order by defendant under the contract; (c) that plaintiff cannot recover for any claimed loss of yardage from defendant's having ordered garments of any particular size.

The judgment and order should be reversed on the law and facts and a new trial ordered, with costs to appellant to abide the event.

HUBBS, P. J., CLARK and DAVIS, JJ., concur; CROUCH, J., concurs in result.

Judgment and order reversed on the law and facts and a new trial granted, with costs to appellant to abide event.